UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HANS LAKE,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEP'T; et al.,<br><br>Defendants. | Case No.: 17-CV-2124 JLS (AGS)<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)** |

**I.     Procedural History**

On October 16, 2017, Steven Hans Lake ("Plaintiff"), formerly incarcerated at the George Bailey Detention Facility ("GBDF") located in San Diego, California, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) In addition, Plaintiff filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a Motion to Appoint Counsel. (ECF Nos. 2, 3.) The Court granted Plaintiff's Motion to Proceed IFP, denied his Motion for Appointment of Counsel and dismissed his Complaint for failing to state a claim on which relief could be granted. (ECF No. 4.)

On December 26, 2017, Plaintiff filed his First Amended Complaint ("FAC") and

later filed a second Motion to Appoint Counsel on January 4, 2018. (ECF Nos. 5, 7.) Once again, the Court dismissed his FAC for failing to state a claim upon which relief could be granted. (ECF No. 10.) Plaintiff has now filed his Second Amended Complaint ("SAC") to which he has added a number of new defendants. (ECF No. 11.)

**II.     Sua Sponte Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)**

As the Court previously informed Plaintiff, the Court is obligated by the Prison Litigation Reform Act ("PLRA") to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are[1] "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," at the time of filing "as soon as practicable after docketing." 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under the PLRA, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing § 1915(e)(2)).

*A.     Standard of Review*

"The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

---

[1] At the time Plaintiff filed his original Complaint, he was incarcerated at the George Bailey Detention Facility. (*See* ECF No. 1, at 1.)

applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled," *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

### B. Plaintiff's Factual Allegations

Plaintiff claims that he "informed GBDF medical and correctional officers" that he did not have his arthritis medication. (SAC 5.) Plaintiff claims that the lack of medication "led to a gout attack which left [him] unable to move [his] left elbow," as well as "crippling" him to the "point that [he] couldn't walk." (*Id.*)

Seven days later, Plaintiff "informed the morning nurse of the seriousness of the gout attack" by "showing her [his] elbow" and that he was "visibly limping and struggling to walk." (*Id.*) However, Plaintiff alleges the nurse "turned and walked off disregarding [his] please to be taken to medical for help. (*Id.*) Plaintiff then asked a "deputy for help" and was told that he "had an appointment coming up 'next week.'" (*Id.*)

Plaintiff submitted a grievance on August 31, 2017, "demanding to see the doctor for a 'serious medical need.'" (*Id.*) Plaintiff alleges that this "grievance was read and signed, therefore acknowledged by the Nurse ARJIS #5703." (*Id.*) The grievance was returned to Plaintiff with the notation that he "had an appointment coming up 'this week.'" (*Id.*)

Plaintiff submitted another grievance on September 3, 2017 because he had "not seen the doctor yet in regards to [his] gout attack and [his] pleas to deputies were falling on deaf ears." (*Id.* at 6.) Plaintiff alleges that they disregarded "the fact that [he] could barely walk and had extreme swelling" in his left elbow and foot. (*Id.*) Plaintiff claims he was told "it wasn't serious enough." (*Id.*) This grievance was "read and signed, therefore acknowledged by Nurse ARJIS #5890 and returned by Nurse 5150 stating that Plaintiff "had a doctor's appointment coming up soon." (*Id.*)

Two days later, Plaintiff "asked a deputy to check on the appointment" and was told that he had an appointment scheduled for September 9, 2017. (*Id.*) Plaintiff claims he was "still visibly limping and struggling to walk." (*Id.*) Plaintiff "went to court" on September 7, 2017. (*Id.*) Plaintiff claims the "judge could clearly see the seriousness of [his] condition" and "ordered medical to evaluate and treat" Plaintiff's medical needs. (*Id.*) Four days later, on September 11, 2017, Plaintiff "still had not seen a doctor." (*Id.*) He submitted another grievance "letting GBDF medical know" that he still had not seen a doctor. (*Id.* at 7.) The grievance was returned to Plaintiff with the statement that he "had a court order to see the doctor on September 13, 2017." (*Id.*)

However, on September 13, 2017, the day "came and went with no appointment or visit to the doctor." (*Id.*) Plaintiff was forced to do a "man down" situation on September

4

16, 2017. (*Id.*) Plaintiff claims Defendant Young told him that if he "didn't go back to [his] bunk he would take [Plaintiff] to the hole." (*Id.*) Plaintiff claims he "spoke with Deputy Whitney and Smith about the situation shortly after and was taken to medical in a wheelchair." (*Id.*)

Plaintiff had another "gout attack" on September 29, 2017 and "put in a medical request explaining [he] was having another gout attack in [his] left foot and could barely walk." (*Id.*) This request was "returned four days later and signed by Nurse 5150 stating that [Plaintiff] had a doctor's appointment coming up soon." (*Id.*) However, Plaintiff claims that "appointment never came." (*Id.*) Plaintiff seeks $12 million in compensatory and punitive damages against each of the named defendants. (*See id.* at 13, 15.)

### C. Supervisory Defendants

First, the Court finds that Plaintiff's claims against supervisory defendants requires sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(1) to the extent he seeks relief under § 1983 against Defendants GBDF Facility Commander and GBDF Medical Director. "To state a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." *Campbell v. Wash. Dep't of Soc. Servs.*, 671 F.3d 837, 842 n.5 (9th Cir. 2011) (citing *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987)). The Second Amended Complaint contains no factual allegations describing what these Defendants did, or failed to do, other than allegations that are "responsible for training, suspension, hiring, and conduct of defendants." (SAC 4.)

`To the extent Plaintiff seeks to hold them liable for the actions of their subordinates, there is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Rather, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A less stringent standard of fault for a failure-to-train claim 'would result in de facto respondeat

superior liability on municipalities . . . .'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989))).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986); *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff has not stated a claim against these Defendants because he has failed to allege facts regarding what actions were taken or not taken by these Defendants which caused the alleged constitutional violations. *See Canton*, 489 U.S. at 385 ("*Respondeat* superior and vicarious liability will not attach under § 1983." (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978))).

### D. *County of San Diego*

In addition, the Court finds Plaintiff's SAC requires sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(1) to the extent it seeks relief under § 1983 against the County of San Diego. "To state a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." *Campbell*, 671 F.3d at 842 n.5 (citing *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987)). Although the County of San Diego may be considered a "person" properly subject to suit under § 1983, it may be held liable only where Plaintiff alleges facts to show that a constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality, or a "final decision maker" for the municipality.

*Monell*, 436 U.S. at 690–91; *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 402–04 (1997); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).

In order to allege a claim of municipal liability, Plaintiff must include in his pleading enough "factual content" to support a reasonable inference to show that: (1) he was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to his constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678; *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff's Second Amended Complaint is devoid of any allegation regarding the existence of a custom or policy.

As currently pleaded, Plaintiff's SAC fails to state a claim under 28 U.S.C. §§ 1915(e)(2) against the County of San Diego because he has failed to allege any facts which "might plausibly suggest" that he was denied proper medical care pursuant to any municipal custom, policy, or practice implemented or promulgated with deliberate indifference to his constitutional rights, or that such a policy was the "moving force" or cause of his injury. *See Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Iqbal*'s pleading standards to *Monell* claims); *see also Brown*, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality . . . [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights.")

Accordingly, the Court finds that Plaintiff's SAC fails to state a claim against Defendant County of San Diego, and that it is subject to sua sponte dismissal with respect to this Defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

/ / /

/ / /

### E. Deliberate Indifference to Serious Medical Needs

The remaining named Defendants are the various GBDF nurses who responded to Plaintiff's grievances. Based on the allegations set forth in his SAC, the Court finds that Plaintiff has also failed to state a claim based on a delay or denial of medical care. In order to allege a violation of the Eighth Amendment for inadequate medical care, Plaintiff must satisfy both an objective and a subjective standard. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Plaintiff must plead the existence of an objectively serious medical need. *McGuckin*, 974 F.2d at 1059–60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."). Assuming the SAC provides sufficient allegations of a serious medical need, it is clear, for the following reasons, the SAC fails to include any further "factual content" to show that any Defendant acted with "deliberate indifference to [his] serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Gamble*, 429 U.S. at 104).

The only individually named Defendants are the GPDF Nurses[2] who responded to Plaintiff's grievances. Plaintiff filed a grievance on August 31, 2017 indicating that he was having a "gout attack." (SAC, Ex. 6, Inmate Grievance/Appeal dated Aug. 31, 2017.) The same day, Nurse ARJIS #5708 purportedly responds "sir, you are scheduled to see this doctor this week." (*Id.*) On September 3, 2017, Defendant "Nurse ARJIS #5150" responded to Plaintiff's grievance seeking medical care by indicating "you have a MDSC appt coming up soon, please do not refuse when called." (*Id.*, Ex. 7, Inmate Grievance/Appeal dated Sept. 3, 2017.) In this grievance, Plaintiff also purportedly indicates that "after suffering for nearly 10 days with a gout attack it has subsided." (*Id.*) Plaintiff later filed a grievance on September 11, 2017, which was responded to by a GBDF official[3] on September 12, 2017 indicating that Plaintiff had a "court order to see the doctor 9/13/17." (*Id.*, Ex. 8, Inmate Grievance/Appeal dated Sept. 12, 2017.)

The SAC lacks any specific allegations that the Defendants, all of whom are alleged to have only responded to an administrative grievances, acted with deliberate indifference to his plight by "knowing of and disregarding an excessive risk to his health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Plaintiff does not allege that the responses to the grievances were inadequate but rather that he did not receive the care that was indicated in the grievances themselves. However, this is insufficient to find an Eighth Amendment violation. *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (finding no Eighth Amendment deliberate indifference claim arising from a physician's response to a grievance where they relied on the medical opinions of staff who investigated the plaintiff's "complaints and already signed off on the treatment plan"). While Plaintiff alleges that he was not seen by medical personnel, he does not allege any plausible factual allegations that any of the named

---

[2] Plaintiff also names "Nurse ARJIS #7662" as a Defendant but there are no specific factual allegations contained in the body of the SAC as to this Defendant and it does not appear that this individual responded to any of Plaintiff's grievances attached as exhibits to his SAC.

[3] The name and the ARJIS number for this individual is unreadable. (*See* SAC, Ex. 8.)

Defendants were at all responsible for any delay in receiving care or had any direct knowledge that he did not receive any care.

"Deliberate indifference is a high legal standard." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)). Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation. *Gamble*, 429 U.S. at 105–07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

If Plaintiff wishes to proceed with a claim for deliberate indifference to his serious medical needs based on a delay in providing him with medication or treatment, or with the refusal to provide him with medical care, he must not rely on conclusory allegations, but must allege facts which show that the Defendants knew of and deliberately disregarded his serious medical needs. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *Farmer*, 511 U.S. at 837.

### *F. Leave to Amend*

A pro se litigant must be given leave to amend his pleading to state a claim unless it is absolutely clear the deficiencies cannot be cured by amendment. *See Lopez*, 203 F.3d at 1130 (noting leave to amend should be granted when a complaint is dismissed under 28 U.S.C. § 1915(e) "if it appears at all possible that the plaintiff can correct the defect"). Therefore, the Court will grant him a chance to fix the pleading deficiencies discussed in this Order or he may notify the Court of the intent to proceed as to the excessive force claims only. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

## III. Conclusion and Order

For all the reasons discussed, the Court:

1. **DISMISSES** Plaintiff's SAC for failing to state a claim upon which § 1983

relief can granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2. **GRANTS** Plaintiff <u>thirty (30) days leave from the date this Order is electronically docketed</u> to file a Third Amended Complaint which cures all the deficiencies of pleading described in this Order. Plaintiff is cautioned, however, that should he choose to file a Third Amended Complaint, it must be complete by itself, comply with Federal Rule of Civil Procedure 8(a), and that any claim not re-alleged will be considered waived. *See* S.D. Cal. Civ. Local Rule 15.1; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.").

If Plaintiff fails to file a Third Amended Complaint that still fails to state a claim, his case may be dismissed without further leave to amend. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

3. The Clerk of Court is directed to mail a court approved civil rights complaint form to Plaintiff.

**IT IS SO ORDERED**.

Dated: August 31, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge